# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

WALTER E. MCGOWEN,                )
                                  )
            Plaintiff,            )
                                  )
v.                                )   Case No. CIV-10-100-RAW
                                  )
MICHAEL J. ASTRUE,                )
Commissioner of Social            )
Security Administration,          )
                                  )
            Defendant.            )

## REPORT AND RECOMMENDATION

Plaintiff Walter E. McGowen (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on April 17, 1963 and was 42 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked in the past as a drilling worker, roofer, and welder. Claimant alleges an inability to work

beginning January 1, 2002 due to limitations resulting from tendonitis, left leg pain, dislocated shoulders, back pain, stomach problems, a lung condition, and depression.

**Procedural History**

On December 3, 2003, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On February 15, 2006, an administrative hearing was held before ALJ Jennie L. McLean in Oklahoma City, Oklahoma. On May 26, 2006, the ALJ issued an unfavorable decision on Claimant's application. The decision, however, was reversed and the case remanded for further proceedings by this Court.

On September 16, 2008, a second administrative hearing was conducted before the same ALJ. On November 20, 2009, the ALJ issued another unfavorable decision. The matter was not appealed to the Appeals Council. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made her decision at step five of the sequential

evaluation. She determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform sedentary work with some limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in: (1) posing hypothetical questions to the vocational expert which did not reflect all of Claimant's limitations; and (2) relying upon vocational expert testimony which was inconsistent and varied from the Dictionary of Occupational Titles ("DOT").

## Hypothetical Questioning of Vocational Expert

On February 13, 2004, Claimant was evaluated by Dr. Robert D. Tobias. Dr. Tobias noted Claimant complained of chronic low back pain and knee pain, shoulder dislocations, and pain in his arms and hands and numbness and tingling in his hands. (Tr. 133). He diagnosed Claimant with multiple arthralgias, suspect degenerative arthritis, symptoms consistent with a possible bilateral carpal tunnel syndrome, self-reported diagnosis of dislocatable shoulders (although apprehension testing for dislocation was negative), history of depression, alcohol abuse, and obesity. Claimant was noted at 5'6" with a weight of 286 pounds. (Tr. 135).

Claimant reported right knee pain in August of 2004. (Tr. 180-

81). In March of 2005, Claimant underwent an MRI of his right knee which revealed a tear of the posterior medial meniscus. (Tr. 243, 261).

On April 2, 2008, Claimant was experiencing low back pain and urinary symptoms. X-rays of his back showed end plate spurring in the lower lumbar spine with moderate to severe foraminal narrowing predominantly at L5-S1 and to a lesser extent at L4-5. (Tr. 446-47).

On July 2, 2008, Claimant complained of bilateral wrist and hand pain and neck pain. He was diagnosed with bilateral carpal tunnel syndrome and cervical disc disease. (Tr. 478). Claimant underwent an MRI of the cervical spine which revealed marked posterior disc spurs at C5-6 and C6-7. Claimant had considerable narrowing of the neural foramen on the right side at C5-6 and mild to moderate narrowing of the foramen on the left side at the same level. The MRI also showed a moderate disc bulge in the thoracic spine at T3-4. (Tr. 507).

In March of 2005, Claimant also received counseling for depression. He experienced low interest in life, low energy, difficulty concentrating, crying, and anxiety attacks several times per day. (Tr. 298). Claimant was diagnosed at Axis I: Major Depressive Disorder, Single Episode, Moderate, Anxiety Disorder,

6

NOS, Rule Out Depression Secondary to General Medical Condition, and Rule Out Obsessive Compulsive Disorder; Axis II: Deferred; Axis III: Chronic Shoulder and Knee Problems; Axis IV: Financial Problems, Unemployment, Poor Family Support; Axis V: GAF of 40. (Tr. 299-300). Claimant continued receiving mental health treatment through June of 2008. At that time, Claimant was reporting racing thoughts and poor concentration. (Tr. 452). His depressive symptoms increased and his prognosis was considered poor. (Tr. 454).

In her decision, the ALJ determined Claimant suffered from the severe impairments for Title II purposes of bilateral knee problems. In relation to Claimant's Title XVI claim, the ALJ found Claimant suffered from the severe impairments of bilateral knee problems, anxiety, depression, problems with his neck, bilateral shoulder, arm, and hand pain, and bipolar disorder. (Tr. 378).

The ALJ also found Claimant retained the RFC to perform sedentary work. She did, however, include limitations upon the work in that Claimant could not climb ladders, ropes, or scaffolding; occasional climbing stairs and ramps; no balancing, kneeling, crouching, or crawling; and occasional stooping. The ALJ found Claimant "could understand, remember, and carry out simple, repetitive tasks." She also concluded Claimant could frequently

reach, handle, finger, or feel with both upper extremities, and must be able to wear hand splints as needed. (Tr. 383).

Claimant first contends the ALJ's questioning of the vocational expert did not mirror the RFC findings. Specifically, the ALJ asked the vocational expert:

> ALJ: All right. And then it gets the same sedentary, no climb ladders, ropes or scaffolds, no balance, no kneel, no crouch, no crawl, occasionally climb stairs and ramps, occasional stoop, and then 1-2-3 steps jobs. And then the frequent reaching, finger, fell with both upper extremities. And they can wear splints. Can they do the past relevant work?
>
> VE: No.
>
> ALJ: Are there other jobs?
>
> VE: The occupation of Helper Rotation Clerk, Call Out Operator as previously mentioned would still be appropriate.

(Tr. 595-96).

"Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the vocational expert, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. Talley v. Sullivan, 908

8

F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996). Moreover, Defendant bears the burden at step five of the sequential analysis. Hargis, 945 F.2d at 1489.

The question and answer colloquy between the ALJ and the vocational expert was, to say the least, curious. This Court cannot discern whether the use of the term "1-2-3 steps jobs" is the same as the more traditional limitation of "could understand, remember, and carry out simple, repetitive tasks." Because Defendant has the indisputable burden at step five to demonstrate jobs are available in the economy which Claimant can perform with his limitations and because any questioning must be precise, this Court cannot conclude the ALJ adequately performed her function of asking appropriate questions to support her use of the vocational expert's testimony.

Similarly, the ALJ engaged in questioning with the vocational expert which can only be characterized as confused. The ALJ referred to jobs "2A, 2B, and 2C" in questioning, apparently about light work jobs. (Tr. 588-92). She also inquired about "3A" and "3D" when asking about sedentary jobs. (Tr. 594-95). Again, perhaps the ALJ and the vocational expert were communicating

9

adequately but the record does not support this conclusion. On remand, the ALJ shall be more precise and clear in her questioning of the vocational expert if she intends to rely upon the testimony in her step five analysis.

**DOT Inconsistencies**

The DOT classifies jobs in three reasoning levels. The vocational expert cited to the jobs of a call out operator and telephone quotation clerk which require a Reasoning Level 3. This level contemplates that the claimant must "[d]eal with problems involving several concrete variables in or from standardized situations." *Dictionary of Occupational Titles*, App. C. The ALJ limited Claimant to performing "simple, repetitive tasks" and not the variable situations contemplated by the DOT. If a vocational expert's testimony varies from the DOT, he must explain the inconsistency. Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005). The vocational expert did not do so in the testimony provided at the hearing. On remand, the ALJ shall re-solicit testimony from a vocational expert and clarify if any variance exists in the description of jobs and Claimant's limitations.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not

applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 29th day of August, 2011.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE